UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOLICEL (PTY) LTD.,<br><br>                           Plaintiff,<br><br>v.<br><br>STANMAR INTERNATIONAL [USA] INC. and MARTIN PAMENSKY,<br><br>                          Defendants. | Case No.: 22cv926-LL-BGS<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 14]** |

Before the Court is Defendants Stanmar International [USA] Inc. ("Stanmar") and Martin Pamensky's ("Pamensky") (collectively "Defendants") Motion to Dismiss the First Amended Complaint. ECF No. 14. Defendants' Motion to Dismiss has been fully briefed, and the Court deems it suitable for submission without oral argument. For the reasons stated below, the Court **GRANTS** Defendants' Motion to Dismiss.

## I.    BACKGROUND

Plaintiff Lolicel (Pty) Ltd. ("Plaintiff") is a South African company that sells sugar-free gelatins and puddings under the Simply Delish brand. ECF No. 13, First Amended Complaint ("FAC") ¶¶ 2, 4. The first Simply Delish logo and packaging was designed and launched in August 2008. *Id.* ¶ 19. Although Simply Delish's packaging varied between different flavors and dessert products, Plaintiff's trade dress was comprised of: "(a) the

1

Simply Delish logo; (b) an image of the dessert colored to reflect the flavor of that particular product; and (c) an image of the product used to flavor the dessert (i.e. raspberries, strawberries, chocolate)." *Id.*

Defendant Stanmar International [USA] Inc. is a Delaware corporation whose principal place of business is in California. *Id.* ¶ 5. Defendant Martin Pamensky is allegedly the CEO and President of Stanmar, and a California resident. *Id.* ¶ 6.

In 2010, Plaintiff and Stanmar formed a joint venture for the sale of a new line of Simply Delish "Natural" products in the United States. *Id.* ¶¶ 2, 23. The new Simply Delish Natural product line used the same "Simply Delish" logo that had been developed in 2008, added the word "Natural," and used Plaintiff's distinctive trade dress comprised of: "(a) the Simply Delish logo; (b) an image of the dessert colored to reflect the flavor of that particular product; and (c) an image of the product used to flavor the dessert." *Id.* ¶ 23. Under this joint venture, all expenses and profits were to be shared 50/50. *Id.* Plaintiff would manufacture the product and retain ownership of the brand and its trade secrets, and Stanmar was authorized to distribute and market the Simply Delish Natural products in the United States. *Id.*

The parties operated as a joint venture over the next five years. *Id.* ¶ 26. Plaintiff claims however that beginning in at least 2015, and continuing into 2021, Pamensky "made repeated material misrepresentations of fact regarding Plaintiff's intellectual property and Stanmar's intent to form a new corporation to be owned 50% by Plaintiff and 50% by Stanmar and to hold all of Plaintiff's intellectual property rights." *Id.* ¶ 93. According to Plaintiff, Pamensky knew that these misrepresentations were false when he made them, but he "made them in order to induce Plaintiff to rely on those misrepresentations and take various actions based upon said reliance." *Id.* ¶ 95.

In February 2017, the parties agreed to a new business structure for the manufacture, distribution, and sale of the Simply Delish Natural products. *Id.* ¶ 29. The agreement provided that: (1) Plaintiff would be the sole manufacturer of the Simply Delish products, (2) Plaintiff would charge Stanmar for product at cost plus 15% and Stanmar would pay

Plaintiff a royalty for the use of the Simply Delish brand of $0.05 per unit of Simply Delish-branded products sold, and (3) Stanmar would be the exclusive worldwide distributor of the Simply Delish Natural products, excluding distribution channels serviced by the Plaintiff. *Id.* ¶ 30. From about 2017 through 2020, "the parties conducted themselves in accordance with these agreed-upon terms while they sought to finalize the formal agreement(s) between them." *Id.* ¶ 31.

In 2018, the parties discussed changing the Simply Delish Natural logo and packaging. *Id.* ¶ 35. The redesigned packaging still included Plaintiff's distinctive trade dress comprised of: "(a) the Simply Delish logo; (b) an image of the dessert colored to reflect the flavor of that particular product; and (c) an image of the product used to flavor the dessert." *Id.* The new packaging, however, "added a new stylized Simply Delish logo comprised of a special font cursive script with the first letter of each word being in uppercase followed by lower case lettering" and added a stylized leaf logo on the right-hand side. *Id.*

On March 24, 2020, Pamensky emailed Plaintiff and suggested that "the COVID-19 outbreak had created an immediate need for the parties to come up with a Plan B" and proposed the parties move production of all Simply Delish Natural products from South Africa to the United States. *Id.* ¶ 38. Pamensky "confirmed that the parties would transfer all of Plaintiff's intellectual property, including trademarks, trade dress, and other trade secrets, to the new company to be formed, which the parties would own 50/50." *Id.* After the parties agreed that Stanmar would look for potential manufacturers to produce the Simply Delish Natural products, Plaintiff shared its confidential trade secret information with Defendants, including its suppliers and product formulations. *Id.* ¶ 40.

Plaintiff alleges that it was not thrilled with the idea of sharing its confidential trade secret information, but that it was willing to consider the proposition given the uncertainties of the COVID-19 pandemic and Pamensky's repeated representations that the parties would finalize the agreements they had been discussing since 2017. *Id.* ¶ 39. Relying on similar misrepresentations from Pamensky, Plaintiff also agreed to share trade secret

information with a supplier that Stanmar approached for assistance in adjusting the Simply Delish Natural product formulations. *Id.* ¶¶ 44, 94(b).

In or around early 2021, Plaintiff believes that Stanmar finalized a revised formulation of the Simply Delish Natural product range with Plaintiff's supplier. *Id.* ¶ 45. On or about March 6, 2021, Pamensky sent Plaintiff an email with the "new formulation" asking Plaintiff to try to manufacture the "new formulation," and if Plaintiff could, then Plaintiff could be Stanmar's producer of the product in South Africa. *Id.* According to Plaintiff, this was the first time that Stanmar asserted ownership or control of the Simply Delish brand. *Id.* Plaintiff states that Defendants had always acknowledged that Plaintiff owned the brand prior to this email. *Id.* From that point on, Defendants continued to claim that "Stanmar now owned the Simply Delish brand worldwide and that Plaintiff no longer had any rights to it." *Id.* ¶ 46.

On June 23, 2022, Plaintiff commenced this action against Stanmar and Pamensky. ECF No. 1. On October 4, 2022, Plaintiff amended the complaint once as a matter of course and filed its FAC. ECF No. 13. In the FAC, Plaintiff asserts ten causes of action for: (1) Federal Trademark Infringement – False Designation of Origin, (2) Federal Trade Dress Infringement – False Designation of Origin, (3) Federal Unfair Competition/False Advertising, (4) Common Law Trademark Infringement and Unfair Competition, (5) Common Law Trade Dress Infringement and Unfair Competition, (6) False/Fraudulent registration, (7) Fraud, (8) Violation of Defend Trade Secrets Act, (9) Unfair Competition under Cal. Bus. & Prof. Code § 17200, and (10) Declaratory Relief. *Id.*

On October 18, 2022, Defendants moved to dismiss the second, fifth, and seventh causes of action. ECF No. 14-1, Motion to Dismiss ("Motion" or "Mot."). Defendants also moved to dismiss the third, ninth, and tenth causes of action based on the defective trade dress allegations underpinning the second and fifth causes of action. *Id.* at 2. On November 8, 2022, Plaintiff filed an Opposition ("Opposition" or "Oppo.") to the Motion. ECF No. 17. On November 15, 2022, Defendants filed their Reply ("Reply") in support of their Motion. ECF No. 19.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A court may accept all factual allegations as true, but it need not accept legal conclusions as true. *Id.*; *Twombly*, 550 U.S. at 555.

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."[1] Fed. R. Civ. P. 12(b)(6). A court may grant a Rule 12(b)(6) dismissal when the plaintiff fails to present a cognizable legal theory or allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). While a complaint "does not require 'detailed factual allegations,'" to avoid a Rule 12(b)(6) motion to dismiss, it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A "formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the

---

[1] In the Opposition, Plaintiff notes that Defendants rely on several cases in which courts analyzed trade dress and fraud claims in relation to motions other than motions to dismiss (e.g., motions for summary judgment, motions for preliminary injunctions, etc.). Oppo. at 5. While different standards govern a motion to dismiss, Defendants do not appear to rely on these cases for different pleading standards. Specifically, Defendants state they rely on cases involving other types of motions for the "essential elements and other fundamentals of trade dress and fraud." Reply at 2. In any event, the Court considers relevant legal authorities under the applicable motion to dismiss standard in evaluating this Motion.

nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Should a court dismiss certain claims, it must then decide whether to grant leave to amend. "Courts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (citation omitted) (quoting Fed. R. Civ. P. 15(a)(2)). A "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted). Leave to amend generally should only be denied if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Defendants move to dismiss Plaintiff's second, third, fifth, seventh, ninth, and tenth causes of action under Rule 12(b)(6). The Court addresses each in turn.

### A. Federal Trade Dress Infringement Claim[2]

Defendants move to dismiss Plaintiff's second cause of action for federal trade dress infringement under section 43(a) of the Lanham Act. *See* Motion at 5, 12. Defendants argue that Plaintiff's asserted trade dress is functional and nondistinctive. *Id.* at 5, 12.

---

[2] Plaintiff's second cause of action is titled "Federal Trade Dress Infringement – False Designation of Origin," but the parties treat the cause of action as a trade dress infringement claim. *See, e.g.*, Mot. at 11–20; Oppo. at 11–15. Trade dress infringement and false designation of origin are distinct claims, requiring a plaintiff to prove different elements. *Compare Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001) (enumerating three elements needed to prove a trade dress infringement claim), *with Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 928 (C.D. Cal. 1996) (enumerating five elements needed to prove a false designation of origin claim). Because the parties proceed with the understanding that the second cause of action is for trade dress infringement, this Court will do the same.

"Trade dress refers generally to the total image, design, and appearance of a product and 'may include features such as size, shape, color, color combinations, texture or graphics.'" *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (quoting *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993)). To state a trade dress infringement claim, a plaintiff must allege: (1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion. *Id.* (citing *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir. 1998)). Here, Defendants do not dispute that Plaintiff's trade dress creates a likelihood of consumer confusion. Therefore, the Court only addresses the other two prongs of the test: (1) functionality; and (2) distinctiveness.

Trade dress commonly falls into one of two main categories: product design or product packaging. *See Kids' Town at the Falls LLC v. City of Rexburg*, 570 F. Supp. 3d 911, 923 (D. Idaho 2021); *see also Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000) (trade dress originally only included the packaging of a product, "but in recent years has been expanded by many Courts of Appeals to encompass the design of a product."). Product design "typically relates to the protected nature and design of an actual, physical product." *Kids' Town at the Falls*, 570 F. Supp. 3d at 923 (emphasis omitted). "Product packaging also relates to a physical product, but typically is not the product itself, but rather the "dressing" or manner in which the product is presented to the public." *Id.* (emphasis omitted). "An example of a product design trade dress would be a three-dimensional product purchased by the consumer," whereas product packaging trade dress "could be the labels, packaging, or design of that same purchased product." *Id.*

Here, Plaintiff alleges this is a product packaging case. *See generally* FAC; *see also* Oppo. at 13 ("Plaintiff alleges that its trade dress consists of its packaging."). Plaintiff alleges the Simply Delish line of products' trade dress is comprised of the following elements: "(a) the Simply Delish logo; (b) an image of the dessert colored to reflect the

flavor of that particular product; and (c) an image of the product used to flavor the dessert (i.e. raspberries, strawberries, chocolate)." FAC ¶ 19. These components of Plaintiff's trade dress relate to the physical products but are not the actual products. Specifically, Plaintiff states although "the packaging varies between flavors and dessert products," the "Simply Delish logo is featured prominently on the front of the packaging and forms the dominant aspect of the trade dress for customers to identify the product." *Id.* Plaintiff also includes photos its trade dress in different packaging over the years. *See id.* ¶¶ 19, 23, 35. Based on these allegations, it appears Plaintiff seeks to protect the labels, packaging, and colors of its product, and not the overall "look and feel" of its product. *See Kids' Town at the Falls*, 570 F. Supp. 3d at 924. With that, the Court turns to the first factor under *Clicks Billiards* and asks whether Plaintiff has shown that its trade dress is non-functional.

### 1. Functionality

"Trade dress protection extends only to design features that are nonfunctional." *Clicks Billiards*, 251 F.3d at 1258. There are two types of "functionality": (1) utilitarian functionality, which is "based on how well the product works," and (2) aesthetic functionality, which is "based on how good the product looks." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 865 (9th Cir. 2020). A trade dress has utilitarian functionality "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995). A trade dress has aesthetic functionality "if it serves an aesthetic purpose wholly independent of any source identifying function, such that the trade dress's protection under trademark law would impose a significant non-reputation-related competitive disadvantage on its owner's competitors." *Blumenthal Distrib.*, 963 F.3d at 865 (internal quotation marks omitted). "[T]he existence or nonexistence of alternative designs [may also serve] as probative evidence of [aesthetic] functionality or nonfunctionality." *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 886 (9th Cir. 2018). Under either category, "functional elements that are separately unprotectable can be protected

together as part of a trade dress." *Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1130–31 (9th Cir. 2016) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987)).

Ultimately, functionality is a question of fact, and courts have held the functionality inquiry cannot be resolved at the motion to dismiss stage. *See Fuddruckers,* 826 F.2d at 843; *see also Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002) ("[F]unctionality is generally viewed as an intensely factual issue."); *Five Star Gourmet Foods, Inc. v. Ready Pac Foods, Inc.*, 2019 WL 1260634, at *4 (C.D. Cal. Mar. 18, 2019) ("the court's limited question at this [motion to dismiss] stage is whether non-functionality is sufficiently pled.").

Defendants argue that Plaintiff fails to adequately allege that its trade dress is nonfunctional. *See* Mot. at 12–15; Reply at 3–8. As noted above, however, Plaintiff identifies three features of the Simply Delish and Simply Delish Natural logo and packaging as its trade dress: (a) the logo, (b) an image of the dessert colored to reflect the particular flavor, and (c) an image of the produce used to the flavor the dessert. *See* FAC ¶ 19, 23, 35. Plaintiff's arrangement of these different features "appear[ ] to serve a purely aesthetic purpose comprised of specific colors, fonts and styles." *Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1171 (C.D. Cal. 2017). Further, Plaintiff alleges its trade dress does not concern the use or purpose of its items because its product packaging styles vary "between flavors and dessert products" to help "customers identify the product" and distinguish it from those of its competitors. FAC ¶ 19; *see also* Oppo. at 14. Indeed, the photos of the Simply Delish and Simply Delish Natural logo and packaging over time show slight differences in design, which suggest that the products "could be presented in many ways" and are "not necessarily functional." *Millennium Labs*, 817 F.3d at 1130–31. Taken as a whole and drawing all reasonable inferences in Plaintiff's favor, the Court finds Plaintiff sufficiently pleads a claim that the features of the trade dress are non-functional at this motion to dismiss stage. *See Five Star Gourmet Foods*, 2019 WL 1260634, at *4.

///

## 2. Distinctiveness

Defendants argue that Plaintiff also fails to adequately allege that its trade dress is distinctive. *See* Mot. at 16–20; Reply at 8–10. Distinctiveness requires the trade dress be "capable of distinguishing the applicant's goods from the goods of others." *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998). In a product packaging case, a plaintiff must establish that the mark "either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (emphasis omitted); *see also Kids' Town at the Falls*, 570 F. Supp. 3d at 924.

Here, the parties appear to agree that Plaintiff must establish that its claimed trade dress is inherently distinctive as neither party claims the trade dress has acquired distinctiveness through secondary meaning. Packaging is inherently distinctive if its "intrinsic nature serves to identify [a] particular source." *Wal-Mart Stores*, 529 U.S. at 210. To determine whether packaging is inherently distinctive, the court may look to: (1) whether the design "was a common basic shape or design," (2) "whether it was unique or unusual in a particular field," (3) "whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods," or (4) "whether it was capable of creating a commercial impression distinct from the accompanying words." *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342, 1344 (C.C.P.A. 1977); *see also* Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 15.10 cmt. (2017) ("While the Ninth Circuit has not specifically addressed use of *Seabrook*, it has generally suggested that inherently distinctive trade dress involves the overall impression that is arbitrary or uncommon).

Here, although Plaintiff repeatedly alleges its trade dress is distinctive and claims its trade dress includes three components, Plaintiff does not allege any facts that Simply Delish's packaging was inherently distinctive. *See* FAC ¶¶ 59–63. Allegations that the trade dress is distinct, without more, is insufficient to support an inference of

distinctiveness. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Therefore, the Court grants Defendants' Motion as to the federal trade dress infringement claim. The Court does so with leave to amend because amendment would not be futile, unduly prejudice the parties, or cause undue delay, and Plaintiff has not acted in bad faith. *See Leadsinger*, 512 F.3d at 532.

### B. Unfair Competition and False Advertising Claims

Defendants move to dismiss Plaintiff's third cause of action for federal unfair competition and false advertising under 15 U.S.C. § 1125(a) or the Lanham Act, and ninth cause of action for unfair competition under California Business and Professions Code § 17200. *See* Mot. at 5. Defendants argue these causes of action should be dismissed because they are based on Plaintiff's defective federal trade dress allegations. *See id.*

As discussed above, the Plaintiff's trade dress infringement claim is not adequately pled. Given that Plaintiff has not sufficiently pled claims for trade dress infringement under the Lanham Act, Plaintiff's federal unfair competition and false advertising claim premised upon the Lanham Act also fail.

Further, regarding Plaintiff's ninth cause of action, the Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (citing *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991)). "Because these claims are substantially congruent, if Plaintiff has sufficiently pled claims for trademark infringement, it too has sufficiently pled a claim for unfair business practices." *See Sugarfina, Inc. v. Sweet Pete's LLC*, 2017 WL 4271133, at *6 (C.D. Cal. Sept. 25, 2017) (citation omitted). Here, Plaintiff's unfair competition allegations stem from Defendants' "intentional, willful, and malicious intent" and "immoral, unethical, oppressive, and unscrupulous" conduct. FAC ¶ 117. Moreover, the focus of Plaintiff's unfair competition claim is Defendants' use of Plaintiff's trade dress. *See* ¶ 115. For the same reasons that Plaintiff fails to state a trade

dress infringement claim, Plaintiff's claim for unfair competition also fails. *See Sugarfina*, 2017 WL 4271133, at *6. Accordingly, the Court grants Defendants' Motion as to the claims for federal unfair competition and false advertising and unfair competition under Cal. Bus. and Prof. Code § 17200 with leave to amend.

### C. Common Law Trade Dress Claim

Defendants move to dismiss Plaintiff's fifth cause of action for common law trade dress infringement and unfair competition. *See* Mot. at 5. Defendants argue that the fifth cause of action parallels the second cause of action "to the extent based on Plaintiff's assertions of its invalid, unprotectable trade dress." *See id.*

Here, Plaintiff's fifth cause of action is predicated on the same trade dress asserted in the federal trade dress infringement claim. *Compare* FAC ¶¶ 59–60 (Plaintiff's trade dress infringement allegations in the second cause of action), *with* FAC ¶¶ 79–81 (Plaintiff refers to the same trade dress from the second cause of action in the fifth cause of action). Because Plaintiff has not sufficiently pleaded a trade dress infringement claim under the Lanham Act, Plaintiff also has not stated a claim for common law trade dress infringement. Accordingly, the Court grants Defendants' Motion as to the common law trade dress infringement and unfair competition claim with leave to amend.

### D. Declaratory Relief

Defendants move to dismiss Plaintiff's tenth cause of action because it is also based on Plaintiff's invalid, unprotectable trade dress allegations. *See* Mot. at 5, 12.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). To demonstrate that an actual controversy exists, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007). Additionally, in order for a

court to grant declaratory relief, the actual controversy between the parties "must relate to a claim upon which relief can be granted." *Leadsinger, Inc. v. BMG Music Publishing*, 429 F. Supp. 2d 1190, 1193 (C.D. Cal. 2005).

Here, Plaintiff's declaratory relief cause of action is based on Plaintiff's trade dress. *See* FAC ¶¶ 123–127. Plaintiff states that it "seeks a judicial declaration that Plaintiff is the rightful owner of the "Simply Delish" and "Simply Delish Natural" trademarks and trade dress." *Id.* ¶ 126. The tenth cause of action is based on the second cause of action, or the federal trade dress infringement claim, which the Court dismissed above. Further, the Court has granted Defendants' Motion to dismiss the parallel causes of action. Without more, the Court finds nothing in the FAC to support a case of actual controversy between the parties. Accordingly, the Court grants Defendants' Motion as to the declaratory relief claim with leave to amend.

### E. Fraud Claim

Defendants move to dismiss Plaintiff's seventh cause of action for fraud. *See* Mot. at 5. Defendants argue that Plaintiff has failed to particularly and plausibly plead the essential elements of fraud. *See id.* at 20.

Fraud pleadings are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a plaintiff "alleging fraud or mistake . . . [to] state with particularity the circumstances concerning the fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid, ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). Allegations under Rule 9(b) must be stated with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Under California law, the elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 93 (2001).

Defendants argue that Plaintiff has failed to allege that: (1) Defendants made misrepresentations, (2) Defendants intended to induce Plaintiff to rely on these allegedly false promises, and (3) there was justifiable reliance. *See* Mot. at 20. Here, Plaintiff alleges that Defendant Pamensky made verbal and written "material misrepresentations" that Defendant "Stanmar would abide by its agreement to form a holding company to be owned 50% by Plaintiff and 50% by Stanmar." FAC ¶ 94. Although Plaintiff identifies Pamensky as the party making these misrepresentations and states an agreement was made "in or about 2020," Plaintiff has not plead any of these misrepresentations with the requisite particularity. Plaintiff fails to explain the "what, when, where, and how of the misconduct charged." *Cafasso*, 637 F.3d at 1055. To adequately state a claim that Defendants made misrepresentations, Plaintiff must identify the specific contents of Defendants' misrepresentations, state specifically when those misrepresentations were used, where Defendants used those words, how those words were misleading, and why those words were false. *See id.*; *Swartz*, 476 F.3d at 764.

Plaintiff further alleges Pamensky's false promises were intended to induce reliance. FAC ¶ 95. Specifically, Plaintiff alleges that Defendants' intent to defraud was "evidenced by their conduct in continuing to assure Plaintiff throughout 2020 that the parties would finalize their agreements memorializing their business relationship" while pressuring Plaintiff to agree to disclose its confidential trade secret information using the COVID-19 pandemic. *Id.* Plaintiff's allegations that Defendants' intent was evidenced by their continued conduct and assurances are too general to give Defendants notice of their particular misconduct. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) ("circumstances constituting the alleged fraud be specific enough to give defendants

notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong.") (quotation marks and citation omitted).

In addition, Plaintiff alleges that it was justified in relying on Pamensky's misrepresentations because "it was not provided with the true fact" that Defendants "never intended to form a new corporation with Plaintiff or further honor their business relationship." *Id.* ¶ 97. Plaintiff further states it was justified in relying on Pamensky's misrepresentations because "the parties had operated under the general framework of their agreed-upon business relationship over the past three years without any deviations from its material terms." *Id.* Although Plaintiff asserts it was justified in relying on Pamensky's representations, Plaintiff has not particularly identified which misrepresentations upon which it was justified in relying on. In sum, Plaintiff's allegations are not sufficient to meet the specificity required by Rule 9(b). *See* Fed. R. Civ. P. 9(b); *see also Swartz*, 476 F.3d at 764. Accordingly, the Court grants Defendants' Motion as to the fraud claim. The Court does so with leave to amend because amendment would not be futile, unduly prejudice the parties, or cause undue delay, and Plaintiff has not acted in bad faith. *See Leadsinger*, 512 F.3d at 532.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss with leave to amend. Plaintiff shall file any amended complaint within twenty-one (21) days of the issuance of this Order.

**IT IS SO ORDERED.**

Dated:  April 27, 2023

_____
Honorable Linda Lopez
United States District Judge